IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
5:11-CV-345-D

| | |
|---|---|
| ELIZABETH JANE MAKURAT, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>MICHAEL J. ASTRUE, )<br>Commissioner of Social Security, )<br>)<br>Defendant. ) | **MEMORANDUM AND**<br>**RECOMMENDATION** |

In this action, plaintiff challenges the final decision of defendant Commissioner of Social Security ("Commissioner") denying her application for Supplemental Security Income ("SSI") benefits on the grounds that she is not disabled. The case is before the court on plaintiff's and the Commissioner's respective motions for judgment on the pleadings (D.E. 28, 30). Both parties filed memoranda in support of their respective motions (D.E. 29, 31). The motions were referred to the undersigned Magistrate Judge for a memorandum and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). (D.E. 32). For the reasons set forth below, it will be recommended that the Commissioner's motion be allowed, plaintiff's motion be denied, and the final decision of the Commissioner be affirmed.

## I. BACKGROUND

**A.     Case History**

Plaintiff filed an application for SSI benefits on 2 February 2009 alleging the onset of disability on 2 February 2006. Transcript of Proceedings ("Tr.") 10. The application was denied initially and upon reconsideration, and a request for hearing was timely filed. Tr. 10. On 26 October 2010, a hearing was held before an Administrative Law Judge ("ALJ"). Tr. 10, 19-43.

The ALJ issued a decision denying plaintiff's claim on 15 November 2010. Tr. 10-18. Plaintiff timely requested review by the Appeals Council. Tr. 6. The Appeals Council denied the request for review on 25 May 2011. Tr. 1-5. At that time, the decision of the ALJ became the final decision of the Commissioner. 20 C.F.R. § 416.1481. Plaintiff commenced this proceeding for judicial review on 30 June 2011, pursuant to 42 U.S.C. § 405(g). (*See In Forma Pauperis* Mot. (D.E. 1); Order Allowing Mot. (D.E. 5); Compl. (D.E. 6)).

B.  **Standards for Disability**

The Social Security Act ("Act") defines disability as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A); *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). The Act defines a physical or mental impairment as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §1382c(a)(3)(D). "[A]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 1382c(a)(3)(B).

The regulations under the Act ("Regulations") provide the following five-step analysis that the Commissioner must follow when determining whether a claimant is disabled:

> (i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled. . . .

(ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in § 416.909, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled. . . .

(iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in [20 C.F.R. pt. 404, subpt. P, app. 1] ["listings"] and meets the duration requirement, we will find that you are disabled. . . .

(iv) At the fourth step, we consider our assessment of your residual functional capacity ["RFC"] and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled. . . .

(v) At the fifth and last step, we consider our assessment of your [RFC] and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled. . . . .

20 C.F.R. § 416.920(a)(4).

The burden of proof and production rests with the claimant during the first four steps of the analysis. *Pass*, 65 F.3d at 1203. The burden shifts to the Commissioner at the fifth step to show that alternative work is available for the claimant in the national economy. *Id.*

In the case of multiple impairments, the Regulations require that the ALJ "consider the combined effect of all of [the claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity." 20 C.F.R. § 416.923. If a medically severe combination of impairments is found, the combined impact of those impairments must be considered throughout the disability determination process. *Id.*

**C.     Findings of the ALJ**

Plaintiff was 37 years old when she filed her application and 39 years old on the date of the hearing. Tr. 16 ¶ 6; 23. She completed school through only the eighth grade, but has

obtained a General Equivalency Diploma ("GED"). Tr. 16 ¶ 7; 36, 38. Plaintiff testified that she had past work as a cashier/stocker, stock person, and insurance clerk. Tr. 23, 39.

Applying the five-step analysis of 20 C.F.R. § 416.920(a)(4), the ALJ found at step one that plaintiff had not engaged in substantial gainful activity since the filing of her application. Tr. 12 ¶ 1. At step two, the ALJ found that plaintiff has the following medically determinable impairments that are severe within the meaning of the Regulations, 20 C.F.R. § 416.920(c): fibromyalgia; asthma; restless leg syndrome; obesity; depression; and anxiety. Tr. 12 ¶ 2. At step three, the ALJ found that plaintiff does not have an impairment or combination of impairments that meets or equals one of the listings. Tr. 12 ¶ 3.

The ALJ determined that plaintiff has the RFC to perform sedentary work, with certain limitations, namely: no balancing or climbing; only occasional stooping, crouching, kneeling, and crawling; and performance of only simple, routine, and repetitive tasks ("SRRTs"). Tr. 13 ¶ 4. At step four, the ALJ found that plaintiff had no past relevant work. Tr. 16 ¶ 5. At step five, the ALJ accepted the testimony of a vocational expert ("VE") and found that there were jobs in the national economy existing in significant numbers that plaintiff could perform, including egg processor, surveillance systems monitor, and cuff folder. Tr. 17 ¶ 9. The ALJ accordingly concluded that plaintiff was not disabled. Tr. 17 ¶ 10.

## II. DISCUSSION

### A. Standard of Review

Under 42 U.S.C. §§ 405(g) and 1383(c)(3), judicial review of the final decision of the Commissioner is limited to considering whether the Commissioner's decision is supported by substantial evidence in the record and whether the appropriate legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Walls v. Barnhart*, 296 F.3d 287, 290 (4th

Cir. 2002); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Unless the court finds that the Commissioner's decision is not supported by substantial evidence or that the wrong legal standard was applied, the Commissioner's decision must be upheld. *See, e.g., Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986); *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Perales,* 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). It is more than a scintilla of evidence, but somewhat less than a preponderance. *Perales,* 402 U.S. at 401.

The court may not substitute its judgment for that of the Commissioner as long as the decision is supported by substantial evidence. *Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992) (*per curiam*). In addition, the court may not make findings of fact, revisit inconsistent evidence, or make determinations of credibility. *See Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *King v. Califano,* 599 F.2d 597, 599 (4th Cir. 1979). A Commissioner's decision based on substantial evidence must be affirmed, even if the reviewing court would have reached a different conclusion. *Blalock*, 483 F.2d at 775.

Before a court can determine whether a decision is supported by substantial evidence, it must ascertain whether the Commissioner has considered all relevant evidence and sufficiently explained the weight given to probative evidence. *See Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997). "Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the administrator." *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983).

### B. Overview of Plaintiff's Contentions

Plaintiff challenges the ALJ's evaluation of her credibility, assessment of the opinion of one of her treating physicians, RFC determination, and hypothetical to the VE. The court will examine each ground in turn.

### C. Evaluation of Plaintiff's Credibility

Plaintiff contends that the limitations arising from her impairments are disabling. Her allegations include those in her testimony at the hearing. She testified that she is not able to work because of pain all over her body and a shaking condition caused by her fibromyalgia. Tr. 28-29. She further testified that she has pain in all her joints and restless leg syndrome; must lay down three to four times a day; falls one or two times a week, requiring that someone be with her at all times; and can drive only short distances and do very little house cleaning. Tr. 30, 33, 34, 37. She also testified that she suffers from severe depression along with anxiety and panic attacks. Tr. 35-36.

After presenting a summary of plaintiff's testimony, the ALJ found plaintiff's allegations regarding her limitations not fully credible. Tr. 14 ¶ 4. Plaintiff argues that this finding was legally erroneous. The court disagrees.

As noted, this court is not permitted to make credibility assessments, but must determine if the ALJ's credibility assessment is supported by substantial evidence. *Craig*, 76 F.3d at 589. The ALJ's assessment involves a two-step process. First, the ALJ must determine whether plaintiff's medically documented impairments could cause plaintiff's alleged symptoms. *Id.* at 594-95. Next, the ALJ must evaluate plaintiff's statements concerning those symptoms. *Id.* at 595. If the ALJ does not find plaintiff's statements to be credible, the ALJ must cite "specific reasons" for that finding that are "grounded in the evidence." *Dean v. Barnhart*, 421 F. Supp. 2d

898, 906 (D.S.C. 2006) (quoting Soc. Sec. Ruling 96-7p, 1996 WL 374186, at *4 (2 July 1996)); *see also see also* 20 C.F.R. § 416.929 (setting out factors in evaluation of a claimant's pain and other symptoms).

In assessing plaintiff's allegations, the ALJ made the step-one finding that plaintiff's "medically determinable impairments could reasonably be expected to cause some of her alleged symptoms." Tr. 15 ¶ 4. At the second step of the credibility assessment, the ALJ found that plaintiff's allegations were not fully credible. Tr. 15 ¶ 4. He stated that "the [plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the . . . [RFC] assessment." Tr. 15 ¶ 4.

The ALJ provided specific reasons for his credibility determination, systematically addressing the limitations associated with each of the severe impairments he found plaintiff to have. Tr. 15 ¶ 4. For example, with respect to plaintiff's asthma, the ALJ noted the relative infrequency of complaints by plaintiff regarding it and the absence of emergency room or hospitalization records due to exacerbation of plaintiff's asthma. Tr. 15 ¶ 4.

As to plaintiff's obesity, the ALJ found that the record does not reveal any limitations directly attributable to it. Tr. 15 ¶ 4. Notwithstanding plaintiff's diagnosis with depression and anxiety, the ALJ found that "there is no indication of overt thought disorder . . . [and] [s]he has not sought ongoing medical treatment for her depressive symptoms." Tr. 15 ¶ 4. With respect to plaintiff's fibromyalgia and restless leg syndrome, the ALJ found that she is treated with medication. *See Gross v. Heckler*, 785 F.2d 1163, 1166 (4th Cir. 1986) ("If a symptom can be reasonably controlled by medication or treatment, it not disabling."). He also noted that her physical examinations are largely within normal limits, including specifically an examination by

Disability Determination Services ("DDS")[1] consulting physician Maqsood Ahmed, M.D. on 1 June 2009 (Tr. 204-08). Tr. 15 ¶ 4. Dr. Ahmed determined that plaintiff was able to perform all activities of daily living and mobility and to complete all of the requested maneuvers on her physical examination without difficulty. Tr. 15 ¶ 4; 208.

Plaintiff challenges each of the grounds cited by the ALJ. She argues that the ALJ's findings regarding asthma are improper because she does not contend that her asthma alone is disabling and therefore the ALJ could not properly view the absence of disabling limitations from asthma as undermining her credibility. But plaintiff does claim asthma as one of the impairments causing her to be disabled. *See* Tr., *e.g.*, 65, 128. It was entirely appropriate, if not essential, for the ALJ to consider the extent to which the asthma contributes to the functional limitations she alleges. Moreover, it is not as if the ALJ deemed plaintiff not to be credible as to the limitations resulting from her impairments generally because he found the limitations from the asthma not to be disabling. As has been seen, he analyzed the limitations resulting from each severe impairment individually. Notably, plaintiff does not contest, and the court finds, that the facts cited by the ALJ in his analysis of plaintiff's asthma are supported by substantial evidence. *See* Tr., *e.g.*, 219, 222-23, 225. The same is true for his analysis of her obesity.

Plaintiff characterizes as "an outright falsehood" the ALJ's "claim that [plaintiff] never sought treatment for her depressive symptoms." (Pl.'s Mem. 7). Plaintiff mischaracterizes the ALJ's decision. He found that plaintiff has not "sought *ongoing* medical treatment for her depressive symptoms." Tr. 15 ¶ 4 (emphasis added). This finding is supported by substantial evidence. For example, many of plaintiff's treatment records do not reflect any complaints of

---

[1] The Disability Determination Services is a North Carolina state agency that makes decisions on applications for disability under the Social Security program. *See* N.C. Div. of Vocational Rehab. Serv., http://www.ncdhhs.gov/dvrs/pwd/dds.htm (last visited 11 July 2012).

depression or anxiety, and others mention it only by way of history. (*See* Tr., *e.g.*, 210, 216, 219-21, 225-27, 232, 234-35). In addition, the only treatment plaintiff received for her depressive symptoms has been from her primary care providers for prescription medication, and there is no evidence of their referral of her to a specialist for other treatment.

Plaintiff also criticizes as irrelevant the ALJ's observation that there is no indication that plaintiff's depression and anxiety are associated with an overt thought disorder. But this argument serves only to confirm the ALJ's determination that plaintiff's mental impairments are not disabling.

Plaintiff further contends that the ALJ wrongly concluded that her physical examinations were "largely within normal limits." Tr. 15 ¶ 4. Plaintiff points to other medical evidence showing abnormal findings. *See* Tr., *e.g.*, 219-21, 228-28, 276-80, 244-45, 246, 311. The ALJ, though, must take the record as a whole and, as discussed more fully below, substantial evidence supports his determination that plaintiff's medical examinations were largely in the normal range. *See* Tr., *e.g.*, 242-52.

Plaintiff also argues that the ALJ disregarded her testimony about the limitations on her functional abilities. But, as indicated, the ALJ summarizes this testimony in his decision and manifestly considered it among plaintiff's other allegations regarding her limitations. *See* Tr. 15 ¶ 4. The ALJ's determination not to treat these aspects of her testimony as fully credible is lawful for the same reasons his credibility determination as a whole is.

Notwithstanding plaintiff's contentions, the ALJ's RFC determination does reflect the physical and mental limitations about which plaintiff complains. As noted, the RFC provides that she is capable of work at only the sedentary level subject to postural limitations and, "due to the decrease in the [plaintiff's] ability to concentrate on and attend to work tasks," the

performance of only SRRTs. Tr. 13 ¶ 4. Indeed, in limiting plaintiff to the sedentary level of work and SRRTs, the ALJ gave "little weight" to the physical RFC assessments (Tr. 196, 197, 202, 300, 301) of the nonexamining DDS consulting physicians finding plaintiff able to perform work at the medium exertional level and the psychiatric review technique findings of a consulting DDS psychologist (Tr. 193) determining plaintiff not to have any significant functional limitations from her mental impairments. Tr. 16 ¶ 4.

The court concludes that the ALJ's determination of plaintiff's credibility is supported by substantial evidence and conforms to the applicable legal standards. Plaintiff's challenge to it is therefore meritless.

### D. Assessment of Treating Physician's Opinion

Plaintiff also challenges the weight given by the ALJ to the opinion of one of her treating doctors, family practice physician Natalie Doyle, M.D., at Nash Street Family Practice. This opinion is addressed below after a review of applicable legal standards.

#### 1. Applicable Legal Standards

The Regulations provide that opinions of treating physicians and psychologists on the nature and severity of impairments are to be accorded controlling weight if they are well supported by medically acceptable clinical and laboratory diagnostic techniques and are not inconsistent with the other substantial evidence in the record. 20 C.F.R. § 416.927(d)(2)[2]; *see Craig*, 76 F.3d at 590; *Ward v. Chater*, 924 F. Supp. 53, 55-56 (W.D. Va. 1996); Soc. Sec. Ruling 96-2p, 1996 WL 374188, at *2 (2 July 1996). The reason is that the treating sources are likely to be those "most able to provide a detailed, longitudinal picture of . . . [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual

---
[2] Citation is to the version of the regulation in effect at the time the ALJ issued his decision, 15 November 2010.

examinations, such as consultative examinations or brief hospitalizations." 20 C.F.R. § 416.927(d)(2). If the medical opinions of the treating source are not given controlling weight, the Regulations prescribe factors to be considered in determining the weight to be ascribed, including the length and nature of the treating relationship, the supportability of the opinions, their consistency with the record, and any specialization of the provider. *Id.* § 416.927(d)(2)-(6). An ALJ's decision "must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." Soc. Sec. Ruling 96-2p, 1996 WL 374188, at *5; *see* 20 C.F.R. § 416.927(f)(2)(ii).

Similarly, the opinions of physicians and psychologist who examine a claimant are generally entitled to more weight than those of physicians and psychologists who did not perform an examination. *See* 20 C.F.R. § 416.927(d)(1), (2); Soc. Sec. Ruling 96-6p, 1996 WL 374180, at *2 (2 July 1996). The weight ultimately attributed to medical opinions of nonexamining sources depends on the same factors, to the extent applicable, used to evaluate the medical opinions of treating sources. 20 C.F.R. § 416.927(f). In addition, if applicable, the status of the nonexamining source as a state agency medical consultant or medical expert used by the Commissioner is to be considered. *Id.* Unless the treating source's medical opinions are given controlling weight, the ALJ must explain in his decision the weight given to the opinions of nonexamining sources as he must do for treating source opinions. *Id.* § 416.927(f)(2)(ii). Notably, however, opinions from medical sources on the ultimate issue of disability and other issues reserved to the Commissioner are not entitled to any special weight based on their source. *See id.* § 416.927(e); Soc. Sec. Ruling 96-5p, 1996 WL 374183, at *2, *5 (2 July 1996).

2.  Analysis

Plaintiff began treatment at Nash Street Family Practice in August 2007. Tr. 209-52, 308-13. In a letter dated 17 August 2009, Dr. Doyle[3] first notes her diagnosis of plaintiff with fibromyalgia, multiple joint pain, asthma, and depression. Tr. 282. She then opines that "[d]ue to the erratic 'flare-ups' of her [f]ibromyalgia pain and [j]oint [p]ain, it would be nearly impossible for her to keep a consistent work schedule." Tr. 282. She explains that flare-ups are unpredictable, and that during them it is difficult for plaintiff to do anything and would be impossible for her to stand for extended periods of time. Tr. 282.

The ALJ reviewed this letter, along with the history of plaintiff's treatment at Nash Street Family Practice. Tr. 14-15 ¶ 4. He stated that he gave only "some weight" to Dr. Doyle's opinion. Tr. 16 ¶ 4. Plaintiff argues that the ALJ erred in doing so. The court disagrees.

As the ALJ explains, the opinion, holding that it would be nearly impossible for plaintiff to work, is on the ultimate issue of whether plaintiff is disabled, which is reserved to the Commissioner. Tr. 16 ¶ 4. The opinion is therefore not entitled to any special weight due to its source. *See* 20 C.F.R. § 416.927(e); Soc. Sec. Ruling 96-5p, 1996 WL 374183, at *2, *5.

The ALJ's assessment of plaintiff's fibromyalgia (and other impairments), although presented in the specific context of his determination of plaintiff's credibility, also clearly underlies the weight the ALJ gave Dr. Doyle's opinion. As this assessment shows, the medical evidence as a whole is inconsistent with the disabling level of impairment plaintiff claims. The court has already determined this assessment to be lawful.

---

[3] The letter was also signed by family nurse practitioner ("FNP") Janice Stump. Although a nurse practitioner is not an "acceptable medical source" under the Regulations, as is a physician, the same factors used to evaluate the opinions of physicians can appropriately be used to evaluate the opinions of a nurse practitioner. 20 C.F.R. § 416.913(d)(1); Soc. Sec. Ruling 06-03p, 2006 WL 2329939, at *4-5 (9 Aug. 2006). The court also notes that FNP Stump works at the same practice with Dr. Doyle, presumably under Dr. Doyle's supervision in plaintiff's case, and obviously shares with Dr. Doyle the opinions expressed in the 17 August 2009 letter. In light of these considerations, the court will not analyze the opinions of FNP Stump separately from those of Dr. Doyle, the same approach taken by the ALJ in his decision. *See* Tr. 14 ¶ 4; 15 ¶ 4.

Notably, Dr. Doyle provides relatively limited support for her opinion. She cites no laboratory findings or specific clinical examinations in her opinion letter, which is only six sentences in length. *See* Tr. 282. Rather, she justifies her opinion on fairly generalized descriptions of plaintiff's condition.

Finally, the court notes that the ALJ did not reject the opinion of Dr. Doyle in its entirety, but rather, as he stated, gave it "some weight." Tr. 16 ¶ 4. That he, in fact, did so is evidenced by the limitations he included in plaintiff's RFC.

The court concludes that the ALJ's attribution of only some weight to Dr. Doyle's opinions is supported by substantial evidence of record and conforms to the applicable legal standard. The court accordingly rejects plaintiff's challenge to this portion of the ALJ's decision.

### E. RFC Determination

Plaintiff contends that as a result of the purported flaws in the ALJ's evaluation of plaintiff's credibility and assessment of the medical opinion evidence, the ALJ's RFC determination is erroneous. As discussed, plaintiff's challenges to these aspects of the ALJ's decision are meritless. Plaintiff's challenge to the RFC determination therefore also fails. The ALJ's RFC determination is supported by substantial evidence of record and is based on applicable legal standards.

### F. Hypothetical to the VE

Lastly, plaintiff argues that the ALJ erred in not including various limitations in his hypothetical to the VE and in not relying on the testimony by the VE that there are no jobs

available to her in response to a hypothetical from her counsel including these limitations. (Pl.'s Mem. 9).[4] Plaintiff's contention is meritless.

To be helpful, a VE's opinion must be "in response to proper hypothetical questions which fairly set out all of [a] claimant's impairments." *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989). A hypothetical question is proper if it adequately reflects a claimant's RFC for which the ALJ had sufficient evidence. *Johnson v. Barnhart*, 434 F.3d 650, 659 (4th Cir. 2005); *Baker v. Astrue*, No. SAG-10-145, 2012 WL 12751, at *4 (D. Md. 3 Jan. 2012) (rejecting plaintiff's objections to the ALJ's hypothetical to VE where "the hypothetical presented to the VE [vocational expert] was supported by substantial evidence and adequately included all the limitations that were deemed credible by the ALJ"). The VE must accept as true the RFC as determined by the ALJ. *Hines v. Barnhart*, 453 F.3d 559, 566 n.5 (4th Cir. 2006).

In this case, the hypothetical presented to the VE by the ALJ adequately reflected the plaintiff's RFC as determined by the ALJ. Tr. 40. The hypothetical posited an individual of the same age, education, and work background as plaintiff who had the exertional capacity for sedentary work with the postural limitations and limitation to SRRTs included in the RFC. Tr. 40. Because, as discussed, the RFC determination was lawful, the hypothetical posed to the VE was as well. Based on this hypothetical, of course, the VE testified that there are jobs that exist in significant numbers in the national and local economies that an individual with the limitations described can perform. Tr. 40-41.

Plaintiff's counsel's hypothetical to the VE included the additional limitations that she could not work an eight-hour day, would need to miss as many as three days a month, and needed to lie down during flare-ups of her fibromyalgia. Tr. 41. In response to this hypothetical,

---

[4] Plaintiff states: "The vocational expert testified that if she had to miss as many as 3 days per month due to flare ups or if she had to lie down during flare ups she would not be capable of working a job in the competitive economy and Ms. Makurat must do both these things." (Pl.'s Mem. 9).

14

the VE testified that plaintiff's inability to work an eight-hour day and absenteeism would preclude employment. Tr. 42. The ALJ committed no error in omitting the additional limitations from his hypothetical to the VE because, as noted, he lawfully determined that these additional limitations do not apply to plaintiff. It was therefore proper for him not to rely on the VE's testimony given in response to the plaintiff's counsel's hypothetical that included these limitations.

The court concludes that the ALJ committed no error in connection with his hypothetical to the VE. The court accordingly rejects plaintiff's challenge to it.

### III. CONCLUSION

For the foregoing reasons, the court finds that the final decision by the Commissioner applied the correct legal standards and is supported by substantial evidence. IT IS THEREFORE RECOMMENDED that the Commissioner's motion for judgment on the pleadings be ALLOWED, plaintiff's motion for judgment on the pleadings be DENIED, and the final decision of the Commissioner be AFFIRMED.

IT IS ORDERED that the Clerk send copies of this Memorandum and Recommendation to counsel for the respective parties, who have 14 days, or such other period as the court directs, to file written objections. Failure to file timely written objections bars an aggrieved party from receiving a de novo review by the District Judge on an issue covered in the Memorandum and Recommendation and, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Judge.

This, the 17th day of July 2012.

_____
James E. Gates
United States Magistrate Judge

15
Case 5:11-cv-00345-D   Document 33   Filed 07/19/12   Page 15 of 15